The argument is 20-1993 FG SRC v. Microsoft Corporation. Now we're ready for you, Mr. Kaysen. Thank you, Your Honor. May it please the court, Jay Kaysen for the appellant FG SRC. I will discuss three issues. The first is the board's erroneous construction of memory module bus. The fact that the local bus of the TSUI reference is not a memory module bus, and there is no direct connection between the FPGA and the memory module or the microprocessing unit in TSUI. And finally, that the original TSUI reference Exhibit 1007 that was presented in the petition is not a printed publication. The board erred in its construction of memory module bus. Can I first ask a sort of housekeeping question? You say in your opening brief that Exhibit 1038 is an entirely different exhibit from Exhibit 1007. But they seem to be the same document to me. Am I missing something? Your Honor, they're all different versions of the same reference that was presented in Exhibit 1007 was an exhibit that was never publicly made available. It was submitted to the conference for review. There's no date in it. It's not authenticated. And it's even partially illegible. There was a Microsoft presented another version of 1007, and they there was actually four versions of this. And there are differences. But the board was referring to 1007 when it said, when it found that it includes an ACM trade inscription, a copyright symbol, and an ISBN number, right? Yes, Your Honor, and the board is plainly wrong. I would urge the court to take a look at Exhibit 1007, and you will see no date. You will see no ACM trade symbol. You will see no copyright symbol, and you will see no ISBN number. The board was just plainly wrong on that. In fact, the board itself called Exhibit 1032 a different document. This is Judge Prowse. You've pointed to alleged differences between Exhibit 1007 and some of the others, such as missing text. But none of the text that was relied on by the board or the parties or the experts as far as an argument on the merits, right? That is correct, Your Honor. Our only point here is that when it was presented in the petition, we had no way of knowing what if this was even prior art or not. This was just a matter of a few months. This was earlier in 1997, and the priority dates for the 524 patent go back to December of 1997. And there was none of that authenticating information present in Exhibit 1007. Well, I think your point seems to me the problem for you is you didn't object within the 10-day time frame to Exhibit 1007 on authenticity grounds. Yes, Your Honor. We did not object within 10 days of institution, but shortly thereafter when Microsoft sought to expunge and replace it, we objected. We also once again objected within four days when they introduced it again in the reply. It, however, doesn't absolve Microsoft of the responsibility of presenting the grounds based on properly authenticated prior art. And they agree that the required evidentiary authentication of Exhibit 1007 simply doesn't exist. And in fact, their own experts in deposition said they didn't rely on Exhibit 1007. They relied on Exhibit 1032. So we believe that there is really no version of TSUI that qualifies as prior art in the petition. And we should decide that not with – there was no obligation for your side to object within the time frame for – objections are contemplated for matters such as this. Are they not? They are, Your Honor. And yes, we did not object within the 10-day period. Our only point here is that while we didn't, there is – it is entirely within the discretion of the board to whether they should, you know, pay attention to that or not. And in fact, we took a separate procedural path that is still valid, which is that we objected to their expunging and replacing. And we took that path. And the board initially agreed with us and did not let them make that replacement. But then in the final decision, they made a plainly erroneous statement that Exhibit 1007 has all these ACM markings, copyright ISBN numbers, et cetera, which is just simply not true. And based on that, they let Exhibit 1007 in. I want to spend a little bit of time talking about the construction of memory module bus. The memory module bus, we believe, is a bus that does not include a peripheral component interconnect bus, that is the PCI bus, or any other equivalent I.O. bus that suffers from the same limitations as a PCI bus, meaning that it has low data transfer rates, high latency, high congestion. And the memory module bus was designed to be a fast, dedicated bus and meant to be separate and apart from a slow bus like a peripheral bus. Figure 5 of the 524 patent, which is on the front page of the patent, shows that very clearly. Item 216 versus item 210. We can see that item 216 is a high-speed 2.1 gigabyte per second memory module bus. So again, I think Judge O'Malley brought this up in another case. You've proposed a number of constructions throughout these proceedings, have you not? We have, actually, the only thing that we've done is we had an extra statement about how the memory module bus should be compatible with applicable standards, and the Board took that out, and we are not appealing that. So that specific clause about being compatible with applicable standards, we note in page 34 of our blue brief that we are not contesting the fact that the Board took that clause out in their definition. What we're instead saying is instead of just having a carve-out for a PCI bus, what the Board made a mistake was that it should have carved out PCI buses and, in fact, all peripheral buses that suffer from the same limitations that the memory module bus was designed to address. So you're saying we should expand the express disclaimer of a PCI bus to cover all other buses, even though there was no express disclaimer? What we are saying is that, in fact, the patent does have an express disclaimer of buses that are like PCI buses that suffer from the same limitations as a PCI bus. Figure 5 shows an AGP bus. It shows an SM bus, and all of them are along with the PCI bus, AGP being the accelerated graphics processor bus, and the system maintenance bus, and the PCI bus. Similarly, in column 7, line 48 onwards in the 524 patent, you can again see that those types of buses are lumped together. And the Board erred in not recognizing that we have the memory module bus, which is a high-speed bus, and then we have the peripheral bus. In fact, under the doctrine of claim differentiation, you can see the same terms, memory module bus in claim 1 and peripheral bus in claim 3. And they have, by definition, different meanings. We believe that there is unambiguous disavowal of PCI. I don't even understand. I'm sorry, but I'm not clear on your claim differentiation argument. I don't see where there's a differentiation problem because the memory bus and the peripheral bus are two different elements performing different functions. Yes, Your Honor. That's the reason why we believe that the memory module bus should not be construed to include the peripheral bus, because it is the data that is being transmitted on the memory module bus. And as claim 3 shows, it's the control information. So one is a data connection, and the other is a control connection. And what we're saying is that memory module bus should be construed to exclude a peripheral bus. In fact, the patent goes on to say the only reason why the patent repeatedly mentions as opposed to a PCI bus is because the PCI bus is a canonical example. The patent tells us in column 1, line 48, that it happened to be the highest performance external interface bus at that time. That's the only reason why it mentions a non-PCI bus. But what figure 5 shows and the teachings in the patent show is that all of these PCI-like buses would not be used to connect the reconfigurable processor to the memory because it's simply not fast enough. And we want that 2.1 gigabytes per second link as opposed to the slower 256 megabytes per second link, which is found in the peripheral bus. There is also overwhelming evidence that TSUI does not disclose a memory module bus. The court relied, I'm sorry, the board relied on the local bus of TSUI to say that it's a memory module bus. But TSUI is a four-page reference. And in the two middle pages, 2 and 3, no less than four times, TSUI tells us that the local bus is slow. The local bus is congested. The local bus simply would not be a memory module bus. Microsoft expert Dr. Howe's testimony that the PCE bus, that the local bus, would in fact meet the limitation of a memory module bus is just flatly wrong. It's contradicted by the specific statements in TSUI itself. What's our review of that? I mean, this seems to be close to a credibility determination that the board made with respect to Dr. Howe's testimony. Your Honor, this court has repeatedly noted that when expert testimony is flatly contradicted by the actual teachings of a reference, then it should be given no weight and it should be set aside. In cases such as Homeware's household and in Erickson versus IP and so on, versus IB, I'm sorry, and so on, here we have a situation where Dr. Howe's testimony is contradicted by how the local bus is described. The architecture of TSUI is actually on three separate cards. And we can see that in Figure 2, which shows the physical layout. There is no way for the local bus, which is on the MPU card, for it to have a direct connection to the memories that are on the main card and to the FPGA, which is on an FPGA card that is on the left. So they have three separate cards. There's no way for a direct data connection whatsoever. So here we have, and our expert pointed all that out. Okay. You're into your rebuttal time. It's up to you whether you want to keep going or whether you want to leave. No, your honors, I will stop right here. Thank you. Mr. Trella. Thank you, your honor, and may it please the court. SRC's arguments in this proceeding have been a moving target all along, and that's continued with what you just heard. I just want to call out one right at the outset. I think my friend suggested that the priority date actually should not be the 2001 date, but 1997, and that's just wrong. Appendix page 506. In fact, SRC told the board that Microsoft's arguments, which we're sort of assuming a 1997 priority date were wrong, and that 2001 is the right date. So that's just the latest example of a switch. Let me turn to where SRC's counsel left off, and that's with this direct connection issue. The board squarely addressed that, and it found that Tsutsui on its face discloses the direct connection. The board explained, and this is at appendix page 32, in the local bus configuration, the, quote, transport data stream is directly input into the FPGA, close quote, and so, quote, Tsutsui discloses the claimed FPGA and direct data connection of the processor element for a memory module bus of a computer system, close quote. The board cited a particular passage of Tsutsui. That's at appendix page 1952, and that passage says, using only the bus architecture and implementation style of our target system should be similar to figure 11. The transport data stream is input into the FPGA directly. Figure 11 of Tsutsui at appendix 1955, in fact, shows the direct connection. A Microsoft expert, Dr. Hauk, explained that, and the board expressly found that Dr. Hauk's testimony was consistent with Tsutsui's text and figures, and that's appendix page 36. Mr. Trello? Yes, sorry. Two things. One is you're going to have to slow down a little bit. Oh, I'm sorry. You need to take a breath or something between sentences. But putting that aside, what is your response to the fact that a local bus can't possibly accomplish what Tsutsui is claiming? Well, the local bus can certainly accomplish what Tsutsui is claiming. I mean, it is, after all, Tsutsui's local bus. Now, Tsutsui points out that there are disadvantages to using the local bus and proposes three separate connection configurations. But it clearly proposes the local bus, says that it will work in the YARDS system that Tsutsui is disclosing. It discloses a direct connection, as the board found, from the local bus to the FPGAs and direct provision of data on the local bus. So it squarely meets the limitations of the 524 patent claim as construed by the board. And I would also note that our expert, Dr. Hauk, testified without contradiction that a person of ordinary skill who read Tsutsui would know, in fact, that the local bus is not a PCI bus. That's at appendix 1772 to 73, paragraphs 190 to 91. And before the board, SRC never argued that the local bus in Tsutsui was a PCI bus. In fact, it just said, well, it's analogous to or it shares some characteristics with a PCI bus. So this notion that the local bus in Tsutsui could not be a memory module bus, it's just squarely contrary both to the text of Tsutsui and undisputed expert testimony that the board found credible. Now, the... Can we go back to the references themselves? I mean, I'm so confused by all these different exhibits. But, I mean, you say that FGA had an obligation to object to the original Tsutsui reference on authentication grounds within a period of time and that they waived that objection, right? And but then turning it around to you, when you went to submit the second version of the reference, you didn't actually ask for permission under the regs, did you? Here's the way things unfolded, Your Honor. We submitted the petition with expert declarations and... Right, and they didn't object, right. And they had Exhibit 1007 attached. Then we discovered that the copy of Tsutsui that was attached was not the same copy that the experts had been citing to. The digital copy was Exhibit 1007, which had been attached. I got all that. My question is, how did you then go try to submit the new one to the board, the correct one to the board? Did you file a motion? Well, you have to seek permission to file a motion. We sought permission to file a motion to swap in 1032 for 1007. The board denied that, but at appendix page 491, it said, we're not going to allow you to do this now, but you can file 1032 at the appropriate time. What does that mean? Well, I think as it unfolded, what that meant was in SRC's patent owner response, they, for the first time, raised some sort of an objection to Exhibit 1007, and there's a paragraph at appendix page 551 on that. In reply, we then submitted evidence to corroborate that Exhibit 1007 is in fact exactly what it was represented to be, namely a copy of the Tsutsui paper that was presented at the 1997 conference. And Exhibit 1032 was submitted as part of that submission, basically to corroborate that it was in fact, that Exhibit 1007 was in fact what it was represented to be. And that's the way the board treated it. It treated it, it didn't treat Exhibit 1032 as a separate prior art reference. It didn't rely on it as the prior art reference. It relied on it as corroborating evidence to show that Exhibit 1007 was in fact exactly what Microsoft said it was. The same thing is true of 1036 and 1038, which are additional copies of the digital version obtained from CD-ROMs that were at academic libraries. And again, they're identical to Exhibit 1007 submitted as corroborating evidence to show that 1007 was in fact exactly what we said it was, which is the, although it was untimely, that was the SRC authentication challenge, which, you know, the board thought it was untimely, but also went on to find that on the merits that we had in fact established the authenticity of Exhibit 1007. Now, I do, that does raise a question. My friend commented that he said that the board made a mistake in finding that there was an ACM inscription and copyright symbol and all of that with Exhibit 1007. I think that that ignores exactly what the board found and, importantly, the context in which the board found it. As the board explained, and this is at Appendix 12, Microsoft had argued that Exhibits 1036 and 1038 were self-authenticating and that because they're identical to 1007, it was self-authenticating as well. Among other things, Microsoft had argued that Exhibit 1038, which, as I've said, was another copy of the digital version, it had an ACM inscription, copyright symbol, and ISBN, and that Exhibits 1007 and 1036 were the same document and thus were self-authenticating as well. The board agreed with Microsoft's argument. It says, we agree with Petitioner that Exhibits 1007, 1036, and 1038 are self-authenticating. So that's what the board found, and it's completely- Am I correct that there's no argument in this appeal that 1036 and 1038 should have been excluded? Self-authenticating? Oh, yes, I don't believe that there was certainly nothing in either of SRC's briefs seems to present any argument at all on 1036 or 1038. They argue about 1007, and they argue about 1032, although, as I said, 1032 was submitted merely to corroborate that 1007 was what it was supposed to be. So, right, 1036 and 1038 are identical. The Tsutsui article in them is identical in all three copies, and no challenge, as far as I know, to 1036 and 1038 as not being authentic or genuine. Turning with the court's permission to the claim construction issue, first, SRC did not propose the construction it's arguing about now to the board. There is a substantive difference in the constructions, although SRC tries to dismiss the standards and protocols part of the construction below as somehow not substantive or irrelevant. In fact, it consumed substantial argument before the board. The board specifically acknowledged that argument in the final written decision and rejected SRC's contention in that regard. They also insert this notion of equivalent into the construction, which was not presented to the board. But even beyond that, the notion that the disclaimer should be broader than just the PCI buses just flies in the face of the specification and this court's precedent concerning claim disclaimers. The case law, as the court is well aware, is very clear. Disclaimers have to be clear and unmistakable and use words of manifest exclusion and restriction. The specification in this case repeatedly talks about PCI buses and only PCI buses. Council mentioned the fact that the specification also refers to system maintenance and accelerated graphics port buses, SM and AGP buses. And that's a significant fact because the patent indicates that the inventors were well mentioned them at all in this supposed disclaimer. The fact that they say that any of these three buses, PCI, SM, and AGP could be used for the control connection does not say that buses other than PCI couldn't also be used for the separate memory module bus connection. So the notion that somehow there was a disclaimer of anything besides PCI buses just has no support in the specification. Also, the claim differentiation argument, as I think the panel, Chief Judge Prost may have suggested, doesn't really seem to follow logically. The claims recite separate, the dependent claims two and three recite separate elements, one for the memory module bus, the other for the control connection. The board construed those as at SRC's request to be separate components, separate pieces of the structure. And they are, in fact, separate pieces of the structure. The fact that you might be able to use the same type of component in two different places, that doesn't contravene claim differentiation. So the notion that the board's construction somehow runs afoul of that doctrine just does not hold any water. I think that that covers the questions that the court raised and that I heard, the argument points that I heard from SRC's counsel. Certainly happy to answer any additional questions the court may have. But otherwise, we will stand on our brief on the other issues. Hearing nothing from the panel, thank you, Mr. Trella. Thank you, Your Honor. Mr. Kaysen, you have some time left for rebuttal. Yes. Thank you, Your Honors. First, Exhibit 1007 is absolutely not identical to 1032 or 1036 or 1038. There are differences. We did not make any challenge to 1036 or 1038 because Microsoft said that they are not relying on that. They said they are relying only on 1007. And Exhibit 1007 was never distributed publicly. The only time we realized there was a problem with it was because when we were taking the deposition of your expert, it was only at that time we realized that the expert had relied on a different version of the Tutsui reference. Exhibit 1007 was never distributed publicly, so therefore it was never a printed publication. What is your response to the argument on the other side that the later submission of the later Tutsui reference was properly considered by the Board for purposes of authenticating the original reference? Your Honor, it was their burden to introduce properly authenticated prior art references that are properly dated in the petition. What we have here is a moving target. What we have here is various versions being introduced in order to qualify and meet the evidentiary standards. And in fact, you know, we have here is a reference where they admitted that it wasn't publicly available. And so right on the face of the petition, the four corners of the petition, we have their main reference is unauthenticated and didn't meet the evidentiary standards on its face. And subsequently, after institution, they've tried to bootstrap this. And at the end, we have a board that says that 1007, in fact, has an ACM trade symbol and ISBN and so on and so forth. And it's just simply not there. It's just simply not there. And I do want to mention that TSUI does not say whether the local bus is a PCI bus or not. It simply says that it's slow and congested. In fact, it goes on to say, let's connect the FPGA to the microprocessing unit using a two-port SRAM instead of the local bus because the local bus is congested. Our expert, Dr. Guccione, said, we don't know what that local bus is, but it's like a PCI bus. It's not a memory module bus. And so Dr. Howe's testimony was flatly contradicted by what is taught in TSUI and by the layout of the three cards. So there is no direct connection whatsoever. And so I'll stop right here. All right. Thank you. We thank both sides and the case is submitted.